* The opinion of the Court was delivered by
Gantt, J.
These grounds may be resolved into one, as each depends upon the proper meaning and construction of the Act of Assembly. P. L. 132. 1 Brev. Dig. 269.[1] The preamble to this Act recites, “that whereas,mo office or offices have been hitherto established, whereby any fine might be passed for barring any feme covert of her right and inheritance, and of her dower or thirds, in any lands or tenemants, but such feme coverts have only joined with their husbands in such conveyances, and by the practice of late years being privately examined before the Chief Justice of the province, have acknowledged that they did freely and voluntarily join with their husbands in such conveyances, without any compulsion, dread, or fear of their said husbands, which being certified by the Chief Justice, the same hath been entered of record in the offices of pleas, yet no law hath hitherto passed for establishing and confirming such practice, so that such titles may he still deemed defective.” The Act then proceeds to declare, that all deeds and conveyances, of the former description, shall be good and effectual in law to bar the feme covert, and her heirs, of such estate as is expressed therein, then concludes by enacting “ that the usual method and practice now observed for the barring of any feme covert of her estate or inheritance, or of her dower and thirds, by joining freely and voluntarily with her husband, in ■any conveyance for the purposes aforesaid, and acknowledging the same before the chief Justice, for the time being, or before any persons by him thereunto authorized, and certified by the Chief Justice, and recorded in the office of pleas, shall be deemed as effectual and valid in the law, to all intents and purposes whatsoever, as auy fine passed in due form of law in his Majesty’s Court'of Pleas at Westminster, for conveying of lands in Great Britain.” It is obvious, from these extracts, that the intent of the Legislature was to assimilate the mode of barring dower here, to that ^usually practiced in England,'by fine levied. An office is created for the purpose, and in respect to the solemnities which are required to be observed in the transfer of the wife’s interest, whether of inheritance or dower, the superintending care and vigilance of the Chief Justice, before whom the examination is had, is to accompany the transaction throughout all its stages. It is to be as valid as any fine passed in due form of law. Now what is a fine ? Co. Litt. 50, defines it to be a feoffment of record, and Blackstone, an acknowledgment of a feoffment on record. It is the result of a suit, actual or feigned, for the recovery of possession of land, and to the passing of it, in due form of law. The *285 statute of 5 Henry IT., c. 14, requires that the note of the fine, which is an abstract of the writ of covenant and the concord, naming the parcel of lands and parties, and the agreement, shall be enrolled of record ; after this is done, comes what is termed the foot of the fine, or its conclusion, being a recapitulation of the whole proceeding, recitingthe parties, day, year and place, and before whom it was acknowledged or levied. Indentures are engrossed therefrom, and delivered to the parties, cognizor and eognizee. This statement of the history of a fine, shows clearly that the acknowledgment made of the right by the cognizor, and the reducing such acknowledgment to record, precedes the completion of the fine intended to be levied. Now, although some of the solemnities in the levying of a fine are omitted in the Act of Assembly, still this act of notoriety, the reducing to record a release of right by a feme covert, is one of the constituent parts, and constitutes the most essential requisite of what is returned.
The ingenious counsel for the defendant has argued, that as no time is fixed by the Act of Assembly for recording the release,- it may be done even after the death of the husband, and all the estate or interest intended to be passed, will then enure to the benefit of the grantee. Now, in general, when a thing is required to be done, and no time is fixed for the doing *of it, then it is to be done immediately, or perhaps a reasonable time (regard being had for the nature and circumstances, of the case,) will be allowed; but if we are, as the Act seems to require, to locate our views and confine them to the manner of passing the interest of the wife by fine in England, then we are necessarily led to the conclusion, that the time for recording was not to be extended beyond the usual time required for the termination of a suit, where no opposition was to be set up, but the action to be confessed on the part of the defendant. Such a latitude of time as is contended for, would be inconsistent with the nature of the interest intended to be passed, and would unquestionably go to defeat all the beneficial effects intended to be secured to the parties concerned, by the required notoriety of the transaction. All the required solemnities, which attach to the levying of a fine in England, are so many common law substitutes for that most solemn and notorious of all acts, at the common law, the investiture by Livery of Seizin. Nothing is to be inferred from the fair character of the gentleman, to whom this release appears to have been made. The rule must be uniform, and cannot 'depend upon a circumstance so contingent. Had his character been different, would the lapse of time, which has intervened since this transaction took place, have sanctified, in any manner his claim ? Eor otherwise, the bar attempted to be set up, would, in such a case, be viewed with a suspicious eye. The x’elease having so long remained unrecorded, (say, for half a century,) would in itself afford the strongest presumption against its efficacy. Might we not fairly suppose, that the Chief Justice had seen cause to suspend the proceeding; that he was not satisfied with what had been done, and tlxat something further was required by him before he would order a record to be made of the renunciation. Might it not have come to his knowledge, either through the wife, or by the instrumentality of some of her friends, that her consent had not been voluntary, that coercion had been practiced by the husband;
*286 *an<^ arrivinS this knowledge before it was admitted to record, he had declined his sanction. Or may we not presume further, that from a supposed agreement and acquiescence on the part of the wife, the renunciation of dower had been formally made out, with the seal annexed, but never acknowledged before the Chief Justice at all. These appear to be fair presumptions in a case so situated ; nor are they at all impaired by the circumstance of her having joined in the release of the fee. This was executed in the presence of witnesses; not of the Chief Justice himself. The interest thereby passed, was one over which she had no control. The fee abided in the husband, and the only interest which the wife had in the land, was one secured to her by the kindness and humanity of the law, and contingent in its nature. The fee simple and estate in dower are separate and distinct estates. The latter springs out of the former eo instante, that the husband dies, by operation of law, and is only a temporary clog to the enjoyment of it. On the death of the wife it merges in the fee which had been priorly created. To conclude on this part of the case, I will only add, that considered in the light of an action in Court, which is the true nature of a fine, it appears to me there would be as much propriety in sustaining a motion to enter up judgment on a writ of covenant which had been made returnable before the then Chief Justice, nunc pro tunc, when some of the parties to the suit have passed away, and those who may have survived the ravages of time, have lost all recollection of what was the subject matter in contest, as to say, that a good record could have been made of this release of dower, at the time it was done. The claim of dower is one founded in the common law, and perhaps there is no right which its wisdom takes more delight in cherishing and upholding than that of dower. The reason which it assigns for allowing it is altogether satisfactory and sufficient, viz., for the sustenance of the wife, and the nurture and education of younger children; to which might be *added the cogent one assigned by Lord Coke, that it is pretium pudoris. So scrupulously just are its provisions in favor of this right to the widow, that it makes a seizin in law as effectual as a seizin in deed, to render the wife dowable of the lands of the husband; thus, protecting her in a state where she is not capable of acting for herself, at the same time, that it will not allow a husband to be tenant by the courtesy of any other than an actual seizin in deed of her lands. Magna Gharta secures the wife from all the then feudal exactions and oppressions with which the cupidity of the nobles had fettered her estate, by declaring that nothing shall be taken for assignment of the widow's dower ; granting to her at the same time the privilege of remaining in the capital mansion house of the husband for the space of forty days, within which time, it requires her dower shall be assigned. Her estate is freed from all tolls and taxes, nor can the king himself distrain for his debt on the dower lands, if contracted during the coverture. The claim, by the rules of the common law, could only be barred by a solemn proceeding on record, such as a fine levied, or common recovery suffered, or by the wife committing some act which would, in itself, render her unworthy the kindness and protection of her husband and the law. And even in such a ease, if, by her address or contrition and amendment, she became reconciled to her husband, she was, “ ipso facto,” restored to her right of dower. Indeed, in tenderness to *287 the sex, and perhaps for the substantial reason assigned by the common law for allowing this claim, they have hitherto been indulged in a manner which modern jurists might deem unreasonable. No provision, which the husband can make after coverture, however it may exceed the value of her dower, can bind her to the acceptance of it in lieu thereof, but on the death of her husband, she is allowed capriciously to reject it, and betake herself to the right of dower secured to her by the common law. Marriage, seizin of the husband, and his death, consummate this right to the *wife. If on the death of the husband, there is no subsisting bar, this newly created freehold estate must rest somewhere, or is gone for ever. To show this, I would refer to a practice usually resorted to in England, for barring dower, viz., by a jointure settled on the wife before marriage, pursuant to statute of Henry Till. By jointure is understood, “ a competent livelihood of freehold for the wife, of lands and tenements, to take effect in profit or possession presently, after the death of the husband, for the life of the wife at least.” And the law is clearly settled, that if the jointure does not take effect immediately on the death of the husband, her common law right becomes vested, and she may resort to it. A jointure agreed upon, and secured, agreeably to the provisions of the statute, constitutes a bar. So here a release of the wife’s right of dower, recorded in pursuance of the Act of Assembly, would constitute a bar, but if omitted to be recorded during the life of the husband, the case falls within the reason which governs in the case of jointure, and cannot be distinguished from it. I will only ask further, that, as the estate of dower is one of a freehold nature, consummated by the death of the husband — where did it rest between the periods of the death of the husband and recording the renunciation of dower ? It is conceived that such an interest cannot be in abeyance. It must take effect pre? sently, or not at all. The freehold was not in the defendant at the time of the death of the husband; for a record of the renunciation of dower was necessary to the completion of his estate, and this had not been done. The freehold therefore appertained to the wife alone. The defendant, by his omission, or those under whom he claimed, had pi'ecluded the possibility of this freehold interest of the wife vesting in him. XJpoti the whole, I am of opinion, that, as no bar to this claim existed on the death of the husband, it was not competent for the defendant, either under the Act of Assembly or the principle of the common law, to defeat the demandant’s claim for dower, and that she *was entitled to recover the same with damages, for the detention, and costs of suit. In which opinion a majority of the Court concur.
Cheves, J.,
delivered his opinion as follows :
The only question in this case is, whether the deed of renunciation by the demandant, was recorded in time or not ? The Act fixed no time. It is very obvious, as was argued very ingeniously by the counsel for the demandant, that the solemnities and requisites of our Act of Assembly were borrowed from the doctrine and practice of fines. As these were records of the Courts, so it was intended to make the renunciation, prescribed by the Act, a record of a Court, and therefore it was to be recorded, not in the office of the Register of Mesne Conveyance, but in the Common Pleas. The Act fixed no time, and as it was connected *288 with no suit or judicial proceeding, no time had been established by practice. It was governed by the prudence and pleasure of the parties. In. this case the act of recording was indeed very long omitted, but I can discover no authority for saying that it was too late. The counsel for the demandant has attempted to fix a period. He says it ought to have been recorded in the life timeof the husband, before the right of the demandant to dower was perfected. This he has attempted to support on principle, and on the particular policy of the case. He argued that where no time is fixed for the performance of an Act, the law requires it to be done in a reasonable time. But this argument was well answered by saying, that where no time is fixed, the Act may be done at any time which will not be injurious to individuals, or contravene any public law. Where the Legislature deems time in itself essential as the rule of its policy, it fixes a precise time, and prescribes an express penalty. It has done neither in this case. The ingenuity of counsel has been unable to fix any period of years which shall constitute this reasonable time. However remote he should have made the period, he could find no *principle or authority which could fix this reasonable time, as relative to time only. His effort, therefore, was to show, that there was a period when the right of the demandant became indefeasible by a deed which was to be subsequently perfected; and the period he fixed on was the death of the demandant’s husband, when her title to dower became complete. Now the argument is, that the estate being perfected, it could not be released by a deed partly executed, while the estate was contingent, and which was perfected after the estate became certain and complete. I ask, why not ? I know, that if a man convey land, to which he has no title, and afterwards acquire a title, it will not pass by the conveyance : but, I know no rule which defeats a title good before, because, anterior to the completion of the conveyance, that title has been strengthened and perfected. Such is the state of facts in this case. There was such a title in the demandant, during her coverture, as enabled her to release by a present conveyance all her right of dower, whether contingent or otherwise. Now, how could the perfecting of that right defeat a conveyance capable of conveying it where it should be perfected, merely because the conveyance was completed at a time, when, according to legal principle, the right was more clearly susceptible of being conveyed? Besides, this rule, if it may be called one, would be intolerable from its want of uniformity. It may, controlled as it must be, by accident, be one day or fifty years.
The argument, that the object of the Legisláture was to give notoriety to the fact, that the wife had renounced her dower, in order that her friends might protect her from undue influence, seems to me to have little weight in itself; because the same influence which effected the solemn renunciation before a judge, wonld repel their interference. Nor is it a kind of protection of the wife which the law anywhere contemplates; but the best answer has already been given, and comes from the demandant’s counsel. The object of the law appears obviously to be to produce *a conformity as far as possible with the doctrine and practice of fines, and intended that the renunciation should only have the effect, by becoming a record of the Court of Common Pleas. The argument, that the renunciation being only an acknowledgment before a judge, and not *289 signed by tbe wife, (another proof that it was intended to be viewed as a kind of judicial record,) she might be personated by another woman, had plausibility, but this was answered sufficiently by the fact, that she necessarily joined her husband in the release, by signing, sealing, and delivering it, which puts the case, in this respect, on the footing of other conveyances. It may be supposed, that, if the recording be required, with a view to make the renunciation a record of Court, some time ought to be fixed with reference to the practice in the cases of judicial records. But there is no analogous practice, because, in this case, there is no suit, and therefore no continuance is necessary or practicable which would fix a period. Were any such analogy applicable to the case, I should say, that in a case where no unfairness is suggested, when it is certain the right was renounced, and a form only omitted, that the Court ought to order it to be recorded “ nunc pro tunc.” The case is one in which the Act fixes no time for the recording of the deed; the demandant is morally bound by it, and no third person has been injured, yet a precise period is to be arbitrarily fixed, and a real and bona fide instrument declared null and void, merely for the omission of this form. I ask for a single parallel or analogous case.
Hunt, for the motion. H. A. He Saussure, contra.
I am of opinion a new trial ought not to be granted.
Colcock, J., concurred.
See Kottman v. Ayer, 1 Strob. 552, overruling Hilligas v. Hartley, 1 Hill Ch. 186; also 6 Rich. 453, note.

 1731, 3 Stat. 303: amended, 1767, 7 Stat. 196.